1   James P. Savitt, WSBA #16847            Honorable Frederick P. Corbit
    Miles A. Yanick, WSBA #26603                                Chapter 9
2   Jacob P. Freeman, WSBA #54123           Hearing Date: May 30, 2019
    SAVITT BRUCE & WILLEY LLP               Hearing Time: 1:30pm
3   1425 Fourth Avenue, Suite 800
    Seattle, Washington 98101
4   Telephone: (206) 749-0500

5   Daniel R. Merkle, WSBA #13589
    DANIEL R. MERKLE PS
6   1325 Fourth Avenue, Suite 940
    Seattle, Washington 98101-2509
7   Telephone: (206) 624-9392

8   *Attorneys for The University of Puget Sound*

9               UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF WASHINGTON
10
    In Re:                              Case No.        17-02025-FPC9
11
    KENNEWICK PUBLIC HOSPITAL
12  DISTRICT,

13                    Debtor.

14  KENNEWICK LIQUIDATION TRUST,        Adv. Proc. No.    17-80042-FPC9

15                    Plaintiff,
                                        **THE UNIVERSITY OF PUGET**
16       v.                             **SOUND'S SECOND MOTION**
                                        **FOR SUMMARY JUDGMENT**
17  THE UNIVERSITY OF PUGET
    SOUND, a Washington nonprofit
18  corporation,

19                    Defendant.

20

    THE UNIVERSITY OF PUGET SOUND'S              **SAVITT BRUCE & WILLEY LLP**
    SECOND MOTION FOR SUMMARY                        1425 Fourth Avenue Suite 800
    JUDGMENT                                      Seattle, Washington 98101-2272
    Adv. Case No. 17-80042-FPC9                          (206) 749-0500

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  FACTS ............................................................................................ 4

   A.   The Ayers Property and the Parties' Efforts to Increase Its
        Value ...................................................................................... 4

   B.   KPHD Sells Portions of the Ayers Property and Keeps All of
        the Proceeds for Itself.......................................................... 8

   C.   The Settlement Agreement and Its Amendment .............................. 9

   D.   KPHD's Bankruptcy, this Adversary Proceeding, and the
        Court's Summary Judgment Order ................................................ 13

   E.   Unbeknownst to the University, KPHD Transfered to the
        Liquidation Trust Title to the Ayers Property.................................. 15

III. ARGUMENT.................................................................................... 15

   A.   The Parties' Current Interests in the Remaining Ayers Property
        Are Determined by the Law of Trusts............................................. 15

        1.   The law of trusts imposes a charge against the beneficial
             interest of a trustee-beneficiary who has committed a
             breach of trust. ..................................................................... 16

        2.   The equitable charge on KPHD's beneficial interest arose
             immediately, and as a matter of law. ...................................... 21

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - i
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 136    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 2 of 50

3.   The parties' settlement is consistent with trust law:  it trues up the trust interests and provides for an immediate reallocation of the interests in the remaining Ayers Property. ...............................................................23

    a.   The University's remedy comes from the trust itself, as contemplated under trust law. ......................25

    b.   Putting the University's remedy in writing does not exempt it from the rules of trust law. ..................27

    c.   The result of the interests in the remaining  Ayers Property.......................................................................28

4.   The Amendment provides for the disposition of the Ayers Property. ....................................................................28

    a.   The Amendment furthers the Ayers' intent...............29

    b.   The result of the Amendment .....................................31

5.   In the alternative, the Settlement Agreement and the Amendment are themselves trust-creating instruments entitled to enforcement. .........................................................32

6.   The University's claim for a charge against KPHD's beneficial interest in the remaining Ayers Property is incontrovertible...................................................................34

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - ii
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

B. The Remaining Ayers Property Should Be Transferred to the University. ...................................................................38

1. The contemplated escrow transaction is no longer possible..................................................................38

2. The Court should order a transfer in accordance with the Amendment, so that each beneficiary obtains its beneficial interest as the Ayers intended. ............................40

IV. CONCLUSION ........................................................42

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - iii
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Safety Cas. Ins. Co. v. City of Olympia,*

    162 Wn.2d 762 (2007)..................................................................28

*Doering v. Doering,*

    [1889] 42 Ch. Div. 203..............................................................20

*FDIC v. Myhre,*

    249 F.2d 887 (9th Cir. 1957)....................................................33

*Grynberg v. Watt,*

    717 F.2d 1316 (10th Cir. 1983)........................................... 36, 37

*Gurley v. Lindsley,*

    459 F.2d 268 (5th Cir. 1972)....................................................33

*Hough v. Stockbridge,*

    150 Wn.2d 234 (2003)..............................................................41

*In re Breast Cancer Prev'n Fund,*

    574 B.R. 193 (Bankr. W.D. Wash. 2017) ...............................18

*In re Capps,*

    193 B.R. 955 (Bankr. N.D. Ala. 1995).....................................33

*In re Craig,*

    144 F.3d 593 (8th Cir. 1998).....................................................26

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - iv

Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*In re Jackson's Estate,*

  200 Wn. 116 (1939)........................................................ 19, 21, 23, 25, 26, 30, 31

*In re Jones,*

  121 B.R. 122 (Bankr. M.D. Fla. 1990)...............................................30

*In re Unicom Computer Corp.,*

  13 F.3d 321 (9th Cir. 1994)...............................................23

*In re Van Nostrand's Will,*

  29 N.Y.S.2d 857 (N.Y. Sur. Ct. 1941) ................................. 21, 22, 26

*In re Wash. Builders Benefit Tr.,*

  173 Wn. App. 34 (2013)..................................................... 18, 32, 33

*Klickman v. Klickman,*

  51 Or. App. 457 (1981) ...............................................33

*Liebergesell v. Evans,*

  93 Wn.2d 881 (1980)...............................................38

*Powell v. Parks,*

  126 Tex. 338 (1935) ...............................................33

*Renz v. Beeman,*

  589 F.2d 735 (2d Cir. 1978) ...............................................36

*Stanley v. U.S. Nat'l Bank of Portland,*

  110 Or. 468 (1924) ................................. 19, 20, 21, 23, 25, 26, 30, 31

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - v
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*State ex rel. Knight Oil Co. v. Verdeman,*

    409 S.W.2d 672 (Mo. 1966)................................................................33

*Sundstrom v. Sundstrom,*

    15 Wn.2d 103 (1942)......................................................................26

**Statutes**

RCW 11.98.008 ................................................................................33

RCW 11.98.078(1).............................................................................34

RCW 70.44.300 ................................................................................11

**Other Authorities**

BOGERT'S TRUSTS & TRUSTEES (West, June 2018 update) .... 17, 20, 21, 23, 25, 26

**Treatises**

RESTATEMENT (SECOND) OF TRUSTS (1959) .. 17, 18, 19, 20, 21, 22, 23, 25, 26, 36, 37

RESTATEMENT (THIRD) OF TRUSTS (2003) .............................. 18, 27, 33, 34, 36, 37

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - vi
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

# I. INTRODUCTION

The Court's Order on Summary Judgment determined that the Ayers' wills created a testamentary trust, that the Ayers Property is the corpus of that trust and, accordingly, that the Ayers Property is not "property of the debtor" in this Chapter 9 bankruptcy proceeding. (ECF No. 126, at 10, 11, ¶¶ 2, 9.) The Court further determined that "[t]he Trust was not terminated by the Settlement Agreement" and thus concluded that "[t]he Hospital holds the Ayers Property in trust, and the University's beneficial interest in the property continues to exist." (*Id.* at 11, 12, ¶¶ 10, 16-17.) It is undisputed that the University's beneficial interest extends to 50% of all proceeds derived from the Ayers Property, as the Court recognized in its Order. (*Id.* at 2, ¶ 5.)

Further, the parties have reached a resolution resolving many of the remaining claims. (ECF No. 137, submitted today.) Under the parties' stipulation, the University has agreed to dismiss its claim for a judicial lien; the Liquidation Trust has agreed to dismiss all claims seeking any avoidance or clawback of payments to the University under the settlement agreement with KPHD; and the parties resolved claims regarding the escrow transaction at issue in the amended complaint. As a result, all claims in the Liquidation Trust's amended complaint are resolved (three were dismissed by the Court's summary judgment ruling, ECF 126, and the remainder are addressed by today's

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 1
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

stipulation), including all fraudulent transfer, preference, and other avoidance claims.

The causes of action left for resolution are the remaining claims set forth in the University's counterclaims. This motion addresses the essential questions that remain for resolution: (a) the extent of KPHD's interest in the remaining trust property, in light of its failure to repay the full amount of the trust funds it misappropriated, and (b) how the trust property should be sold, so that the trust proceeds can be realized and distributed. In sum:

➢ The law of trusts is crystal clear on the key point: when a trustee who is also a beneficiary wrongfully takes for itself trust funds, the other beneficiaries are granted an equitable charge against the trustee-beneficiary's remaining beneficial interest, which attaches at the time of the diversion of funds. Thus, as a matter of law, the University's interest in the remaining Ayers Property and its proceeds comprises the University's 50% beneficial interest plus the amount of the equitable charge necessary so that both parties ultimately receive their 50% share of the net proceeds. (*See* Sections III.A.1–2 below, at pp. 16–23.)

➢ The Liquidation Trust's response is apparently the same as its response to the prior motion, which determined that the trust continues to exist and that the Ayers Property is trust property. The Liquidation Trust asserts that

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 2
Adv. Case No. 17-80042-FPC9

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 136    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 9 of 50

the settlement agreement cuts off the University's trust rights to the equitable

charge, and thereby allows KPHD (and now its successor, the Liquidation Trust)

to take 50% of the remaining trust proceeds even though that results in a major

windfall to KPHD and is contrary to the law of trusts. This argument has even

less merit in this context: not only does the settlement agreement not release

these rights, it expressly confirms and reiterates them. (*See* Sections III.A.3–6

below, at pp. 23–38.)

> Finally, there is the question of how the trust property should be

sold. The University had asked the Court to approve the closing of the documents

put in escrow by KPHD and the University before KPHD initiated this

bankruptcy proceeding (the escrow transaction at issue); that had been an open

issue, and the Court's Plan Confirmation Order provides that how the Ayers

Property should be transferred must be determined in this adversary case. But, in

violation of this order and without notice to the University or the Court, KPHD

and the Liquidation Trust agreed to and completed last year a transfer of the

remaining Ayers Property to the Liquidation Trust. As a result, the escrow

transaction is moot—it simply cannot happen now (and as a result, the University

has agreed to the disposition of this claim in the partial settlement stipulation,

(ECF No. 137, at ¶ 1(a)). But that does not mean that the remaining Ayers

Property cannot or should not be transferred in accordance with the process and

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 3
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

procedure called for by the Amendment—that remains an open issue. We submit that the Court should order a conveyance of the trust property in accordance with the amendment to the settlement agreement, which effects the intention of the Ayers' wills and the trust those wills created. (*See* Section III.B.2 below, at pp. 40–41.)

We now turn to a statement of the relevant facts, and then to a detailed discussion of the apposite law demonstrating the University's right to this relief.

## II.    FACTS

The complete facts are set forth in detail in the University's first motion for summary judgment (ECF No. 101, at pp. 5–16) and the parties' joint statement of material facts (ECF No. 114, hereafter the "JSF"), all of which are incorporated here by this reference as support for this motion. We recite below the agreed-upon and other undisputed facts most relevant to this motion.

## A.    The Ayers Property and the Parties' Efforts to Increase Its Value

By their reciprocal wills J.R. and Alice Ayers made the University of Puget Sound (the "University") and Kennewick Public Hospital District ("KPHD") co-beneficiaries of thousands of acres of property in Benton County, Washington (the "Ayers Property" or the "Property"). (JSF ¶¶ 1, 4.) The wills bequeathed legal title to the Ayers Property to KPHD, and mandated and directed that KPHD

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 4
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

shall pay to the University one-half of all net proceeds from the Property and make an annual accounting to the University of all receipts and disbursements.[1]

In the 1990s, KPHD and the University began to explore the possibility of increasing their beneficial take from the Property by obtaining water rights to allow the irrigation of the Property. Toward this end KPHD applied in 1991 for a permit to draw surface water from the Columbia River for use on the Ayers Property. (JSF ¶ 42.) Both KPHD and the University understood that the purpose of the water-rights permit was to enhance the value of the Ayers Property for their mutual benefit. That is, any increased rents or other proceeds from the irrigated property would be shared equally.

This is particularly evident in correspondence advocating for the permit's issuance, in which KPHD enlisted the assistance of the University as an interested party. For example:

_____

[1] Copies of the Ayers' wills are attached as Exhibits A and B to the Declaration of Sherry Mondou in Support of the University of Puget Sound's Motion for Approval of Transfer of Real Estate Held in Trust, Case No. 17-02025-9, ECF No. 208 (hereinafter "First Mondou Decl.").) The First Mondou Declaration is also attached to the University's Statement of Specific Material Facts in Support of its Motion for Summary Judgment (ECF No. 102) as Attachment 1.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 5
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

➤ In an August 12, 1998 letter to Benton County Commissioner Max Benitz, KPHD's agent and consultant, Timothy Reierson, stated that the University "has indicated willingness to assist as well, with a letter explaining their interest to Ecology Director Fitzsimmons. *The University and KGH share income from the trust lands equally*." (JSF ¶ 43 (emphasis added).) The letter was copied to KPHD's Administrator, its legal counsel, the University, and several State Representatives.

➤ At the request of Mr. Reierson, and using language he provided, the University followed up in a letter to the Department of Ecology Director Fitzsimmons explaining: "We have been contacted by Kennewick General Hospital regarding a water right issue which, as it turns out, directly affects the University of Puget Sound. The University is a beneficiary of annual proceeds from an approximately 8,000 acre property in Benton County which was donated as a trust holding, dedicated to agricultural uses, for our mutual benefit. A portion of the property is planned for irrigated farming in order to realize significantly greater potential earning." (JSF ¶ 44.)

➤ KPHD's Administrator, Thomas Nielsen, subsequently wrote to State Representative Shirley Hankins, similarly explaining: "This land and the proceeds from the land, benefit not only Kennewick General Hospital, but also, one half of the proceeds go to the University of Puget Sound." (JSF ¶ 45.) This letter was copied to the Office of the Attorney General, the University, and others.

As a result, the Department of Ecology likewise understood "that this project would benefit both the Hospital and the University of Puget Sound." (JSF ¶ 46.) Accordingly, DOE's 2003 Report of Examination—a precursor to the issuance of the permit—states:

> The Kennewick Public Hospital District (KPHD) was willed approximately 8,900 acres in the Horse Heaven Hills area of Benton County. According to the terms of the bequest this land must remain in agricultural use, and KPHD desires to maximize its revenues by leasing the 5,592 acres that have been determined irrigable. *Per the*

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 6
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 13 of 50

> bequest, KPHD will split lease revenues with the
> University of Puget Sound.

(SF ¶ 47 (emphasis added).)  When the Yakima Nation appealed the ROE,

KPHD's Chief Executive Officer reiterated and confirmed, in a sworn

declaration, that KPHD held the Ayers Property in trust and that the water rights

were to benefit the trust's beneficiaries:

> Pursuant to a bequest, *KPHD holds certain real property
> in trust, the beneficiaries of which are Kennewick Public
> Hospital District and the University of Puget Sound*.  The
> bequest restricts the use of the real property to
> agriculture. … Surface water application S4-30584 was
> made by KPHD *to develop the trust lands* to make
> irrigated agricultural products such as wine grapes and
> soft fruit sustainable.

(JSF ¶ 48 (emphasis added).)  Then, in 2013, KPHD reiterated unambiguously to

the government that all of the sale proceeds—including water right proceeds—are

subject to the trust.  KPHD Commissioner Victor Johnson advised the

Department of Energy on September 16, 2013 that the sale proceeds

> are to be divided between the [Kennewick Public
> Hospital] District and University of Puget Sound, half
> and half.  *The pending sale amount is over $7 million
> giving roughly $3.5 million to each of the recipients*."

(JSF ¶ 62 (emphasis added).)  The "over $7 million" figure referenced the

proceeds from the sale of both the land and water rights.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 7
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Thus, the parties agreed, stated, and recognized that the benefits and proceeds from the water-rights permit, once obtained, would be shared equally by the University and KPHD as co-beneficiaries of the trust.

**B.    KPHD Sells Portions of the Ayers Property and Keeps All of the Proceeds for Itself**

The State of Washington granted the rights to irrigate certain parcels of the Ayers Property and, in 2014, KPHD sold those parcels to Easterday Farms.  (JSF ¶¶ 12, 55, 64.)  KPHD received $7,377,000 from the Easterday sale.  (JSF ¶ 13.)  Also in 2014, KPHD sold two other small parcels of the Ayers Property to Mark Bauder for a total of $34,500.  (JSF ¶ 14.)

Contrary to the trust provisions in the Ayers' wills, KPHD did not distribute any of the proceeds from the Easterday or Bauder sales to the University; nor even did it tell the University that the sales had happened.  (JSF ¶¶ 12, 15.)  More than that, KPHD took affirmative steps to mislead the University.  (*See* JSF ¶¶ 63–72.)  Initially, for example, KPHD provided the University with a draft of the Easterday sale agreement that stated one sale price covering both the land and the related water rights (JSF ¶¶ 55–57), but it then secretly split the amounts and concealed that split from the University.  (JSF ¶¶ 66–68.)  Then, in response to direct inquiries from the University, KPHD advised that the sale was delayed when actually it had closed.  (JSF ¶¶ 70–72.)

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 8
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  The reason for the deceit: by 2014, KPHD had run into financial difficulties,

2  apparently from the significant debt incurred to build a new hospital.  (JSF ¶ 73.)

3  KPHD used the Easterday and Bauder proceeds to pay its creditors.  (JSF ¶ 74.)

4  ## C.  The Settlement Agreement and Its Amendment

5  When the University learned that KPHD had secretly sold trust property

6  and kept all of the proceeds, it demanded that KPHD account for the retained

7  proceeds and threatened to file suit.  (JSF ¶ 16.)  The parties agreed to mediate the

8  dispute.  (JSF ¶ 17.)  That mediation, which took place in October 2015, lasted 10

9  hours.  (*Id.*)  The parties failed to reach agreement that day, but thereafter

10  continued to negotiate with the assistance of the mediator.  (JSF ¶ 18.)  The

11  negotiations were arm's-length and hard-fought, as confirmed by the undisputed

12  testimony of the lawyer who represented KPHD at the time.  (JSF ¶¶ 75, 76.)  The

13  parties finally reached agreement at the end of January 2016, which KPHD's

14  board approved on February 25, 2016.  (JSF ¶¶ 19, 20.)

15  The Settlement Agreement remedied KPHD's breaches by (1) effecting a

16  true-up of KPHD's trust obligations and (2) clarifying those obligations to ensure

17  no further breaches.[2]  The Settlement Agreement, among other things, provided

18  that KPHD, as legal title-holder, would sell the remaining trust property—the

19  ───────────────

[2] The Settlement Agreement is Exhibit Q to the First Mondou Declaration.

20

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 9
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

portion of the Ayers Property that it did not sell in 2014—and that all of the proceeds from the sale would be delivered directly to the University out of escrow.  (Settlement Agreement ¶ 5(c).)  If the net proceeds were more than the amounts due the University to repay the diverted funds, the surplus would be split—the University agreed to deliver funds beyond that which it was due under the trust back to KPHD.  (*Id.* ¶ 5(c)(iv).)  The Settlement Agreement thus effected the wills' requirement that the University receive a one-half interest in the proceeds from the Easterday and Bauder sales (and from all trust proceeds).

Fifteen months after entering into the Settlement Agreement, KPHD ceased monthly payments due to the University.  (JSF ¶ 22.)  KPHD still held legal title to the remaining Ayers Property and still had the obligation to sell it so that its beneficiary, the University, could receive the proceeds.  KPHD was unable, however, to market and sell the remaining Property appropriately.  (JSF ¶ 77.)

The parties therefore agreed to amend the Settlement Agreement to enable the sale of the remaining Ayers Property and the distribution of the proceeds, so that the University could receive the one-half share of the total trust proceeds to which it is entitled.  (JSF ¶ 25.)  The Amendment allows for the University to relieve KPHD from the burden of marketing and selling the remaining Ayers

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 10
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Property, and set forth how the costs incurred by the University would be allocated.[3] (Amendment ¶¶ 1–4.)

Alternatively, the Amendment allowed the University to take title to the remaining Ayers Property. (Amendment ¶ 5.) If it did so, the University was required to obtain three property valuations for the remaining Ayers Property, and pay to KPHD any "Excess Transfer Value." (*Id.* ¶ 6.) This amount is defined as the difference (if positive) between 50% (representing KPHD's beneficial interest in the Ayers Property) of 90% of the average of the three valuations,[4] minus the "KPHD Obligation Amounts": (i) the balance of the withheld proceeds from the Easterday and Bauder sales, and interest thereon; (ii) the University's expenses incurred in marketing and selling the remaining Ayers Property; (iii) KPHD's share of the closing costs incurred in transferring the Ayers Property to the University; (iv) estimated closing costs in connection with the University's anticipated sale of the remaining Ayers Property; and

_____

[3] The Amendment is Exhibit S to the First Mondou Declaration.

[4] A state statute requires that a public hospital district sell its surplus real estate for no less than 90% of the average of three appraisals conducted within a year of the sale. RCW 70.44.300. The parties agreed that this represented the "Fair Value" of the Property.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 11
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

(v) the University's one-half share of any non-sale proceeds of the Ayers Property that KPHD had failed to distribute to the University (if any).[5]  (*Id.* ¶ 6.) If such difference were negative, there would be a "Transfer Value Deficiency." an amount due the University to remedy the fund diversion which cannot be satisfied from the remaining trust property because its value is insufficient.  (*Id.* ¶ 6(h).)

By this time, the parties were cooperating in good faith to carry out obligations imposed decades before.  (JSF ¶ 78.)  Thus, KPHD kept the University apprised regarding its financial situation and the possibility of its filing for bankruptcy.  (*Id.*)  On June 28, 2017, the University sent KPHD notice of its election to exercise the option to acquire the remaining Ayers Property.  (JSF

---

[5] The University's reply in support of its motion for approval of transfer of real estate held in trust explains in more detail the "KPHD Obligation Amounts" under the Amendment.  (Case No. 17-02025-9, ECF No. 396 at 26–29.)  Upon resolution of the issues presented by this motion, only two issues will remain in this proceeding:  whether and if so in what amount the prevailing party is entitled to an award of attorneys' fees and costs; and an accounting of the trust property rents and income received by KPHD since the Settlement Agreement but which have not to date been shared.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 12
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

¶ 26.)  The University and KPHD executed the documents to convey the remaining Ayers Property; those documents were deposited to escrow on June 30, 2017.  (JSF ¶ 28.)  The escrow transaction, however, never closed.

**D.    KPHD's Bankruptcy, this Adversary Proceeding, and the Court's Summary Judgment Order**

KPHD filed its Chapter 9 bankruptcy petition later in the day on June 30, 2017.  (Case No. 17-02025-9, ECF No. 1.)  KPHD commenced this adversary proceeding by filing a complaint on November 3, 2017.  (Case No. 17-80042-FPC9, ECF No. 1.)  KPHD later filed an amended complaint (ECF No. 56), to which the University responded by filing an answer and counterclaim (ECF No. 80).  In January 2019, both the University and the Liquidation Trust—which was substituted for KPHD—moved for summary judgment.  (ECF Nos. 100, 101.)  After hearing argument the Court denied the Liquidation Trust's motion and granted in part the University's.  (ECF No. 126, hereafter the "Order.")

In its Order, the Court found that the Ayers' wills created a testamentary trust and that the Ayers Property is the corpus of that trust (*Id.* at 11, ¶ 9); and accordingly concluded that the Ayers Property is not "property of the debtor" in this Chapter 9 bankruptcy proceeding (*see id.* at 10, ¶ 2, reciting the rule that "[p]roperty that a debtor holds in trust for the benefit of another is not 'property of the debtor'").  The Court further determined that, contrary to the Liquidation

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 13
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 20 of 50

Trust's argument, "[t]he Trust was not terminated by the Settlement Agreement" (*id.* at 11, ¶ 10), and "[t]he Settlement Agreement contains no terms that can be reasonably construed to provide the Hospital with exclusive ownership of the Ayers Property" (*id.* at 12, ¶ 16). The Court thus concluded that "[t]he Hospital holds the Ayers Property in trust, and the University's beneficial interest in the property continues to exist." (*Id.* at 12, ¶ 17.) It is undisputed, as the Court has found, that the University's beneficial interest extends to 50% of all proceeds derived from the Ayers Property. (*Id.* at 2, ¶ 5; *id.* at 11, ¶ 12.)

In light of its findings and conclusions, the Court denied the Liquidation Trust's motion for summary judgment and granted the University's as to the first three of the amended complaint's claims for relief, which the Court dismissed. (*Id.* at 12–13, ¶¶ 1, 2.) The Court declined to rule, however, on the University's motion to the extent it concerned the amended complaint's fifth, seventh, and ninth claims for relief; that is, the avoidance and preference claims regarding the payments KPHD had made pursuant to the Settlement Agreement. These issues are no longer before the Court. The parties have stipulated to their dismissal as part of a partial settlement of several of the remaining claims, which resolved all fraudulent transfer, preference and other avoidance claims (in addition to the dismissal of certain claims by the University). (ECF No. 137.)

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 14
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

**E. Unbeknownst to the University, KPHD Transferred to the Liquidation Trust Title to the Ayers Property**

In December 2018, before the first motions for summary judgment were briefed and unbeknownst to the University, KPHD transferred the remaining Ayers Property to the Liquidation Trust by quitclaim deed. (Declaration of Miles A. Yanick, dated April 26, 2019 (hereafter "Yanick Decl."), ¶ 2 & Ex. 1.) This transfer was in direct violation of the Court's Plan Confirmation Order. (Case No. 17-02025-FPC9, ECF No. 981, at 33 (ordering that "the Ayers Property shall not be transferred by deed or otherwise except as subject to and as ordered in the UPS Adversary Proceeding"). No one provided any notice of this transaction to the University, and no one at the University knew this was happening. (Yanick Decl. ¶¶ 3–4.)

## III. ARGUMENT

**A. The Parties' Current Interests in the Remaining Ayers Property Are Determined by the Law of Trusts**

Under the law of trusts, an equitable charge against KPHD's beneficial interest in the remaining Ayers Property arose as a matter of law when KPHD breached its duties as trustee by withholding from the University its share of the proceeds from the Easterday and Bauder sales. That charge attaches against KPHD's beneficial interest upon KPHD's defalcation, to the extent necessary to remedy KPHD's breach of duty. This hornbook rule ensures, to the extent

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 15
Adv. Case No. 17-80042-FPC9

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

possible, that when the last trust asset is sold, KPHD and the University will each have received their one-half beneficial interest over the entire life of the trust.

When confronted with its wrongdoing, KPHD negotiated a settlement with the University that compromised the amount of KPHD's liability, and recited their remaining trust interests and how proceeds would be allocated such that each party receives its one-half share of the total proceeds. As the Court concluded in its summary judgment Order, the Settlement Agreement did not end the parties' trust relationship and replace it with that of a creditor and debtor; instead KPHD's trustee/fiduciary relationship with University as beneficiary remains to this day. (Order at 12, ¶ 17.) Consistent with this relationship and the Ayers' wills, the Settlement Agreement reflects the parties' agreement regarding each of their interests in the remaining trust property to ensure that each ultimately receives its one-half share of trust proceeds, net of costs—as mandated by the Ayers' wills and the law of trusts.

### 1. The law of trusts imposes a charge against the beneficial interest of a trustee-beneficiary who has committed a breach of trust.

As trustee, KPHD had a fiduciary duty to distribute one-half of the net proceeds from the Easterday and Bauder sales to the University—a duty it

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 16
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

breached.[6] Thus, under the Washington law of trusts, KPHD's beneficial interest is applied to make up for the misappropriated and diverted distributions.

It is well established that when a trustee who is also a beneficiary commits a breach of trust, the trustee's beneficial interest will be applied to remedy that breach. BOGERT'S TRUSTS & TRUSTEES states the rule:

> If a beneficiary is also a trustee of his own trust, acting for himself and others, as trustee he owes the beneficiaries a duty to perform the trust and not to violate it. If he steals trust funds or causes damage to the trust estate in other ways, *his share under the trust*, whether in his own hands or those of a transferee, *will be taken by the court in order to make good the loss*. If the defaulting trustee-beneficiary has stolen… trust income, *income later due him may be applied first to the restoration of lost income due other beneficiaries*….

Shapo, et al., BOGERT'S TRUSTS & TRUSTEES § 191 (West, June 2018 update) (emphasis added); *see also id.* n.18 (collecting cases).

Likewise, the RESTATEMENT (SECOND) OF TRUSTS states that "[i]f a trustee who is also one of the beneficiaries commits a breach of trust, the other

---

[6] The evidence of this breach is both extensive and undisputed, if and to the extent the Court deems it necessary to so determine. (*See* Section II.B above from the Statement of Facts, at pp. 8–9, and citations to the record therein; and Section III.A.6 below at pp. 34–38, and the law and facts cited there.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 17
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

beneficiaries are entitled to *a charge upon his beneficial interest* to secure their claims against him for the breach of trust." RESTATEMENT (SECOND) OF TRUSTS § 257 (1959) (emphasis added) (hereafter "RESTATEMENT (SECOND)"); *see also* RESTATEMENT (THIRD) OF TRUSTS § 104 & cmt. h (2003) (hereinafter "RESTATEMENT (THIRD)") ("If a beneficiary is personally liable to the trust" for participating in a breach of trust, "the trust is entitled… to a charge against the beneficiary's interest in the trust to secure the payment of the liability.").[7]

In short, an aggrieved co-beneficiary is made whole by having its allocation of what remains of the trust *res* increased, while the offending trustee-beneficiary's allocation is correspondingly decreased, such that all of the beneficiaries ultimately receive, in fact, the distributions dictated by their respective beneficial interests. The Restatement illustrates it this way:

> A bequeaths $30,000 to B in trust for B, C and D in equal shares. B misappropriates $5000 of the trust property. C and D are each entitled to $10,000 and B is entitled to $5000 out of the trust property.

---

[7] Washington courts look to both of the RESTATEMENT OF TRUSTS as persuasive authority. *In re Breast Cancer Prev'n Fund*, 574 B.R. 193, 216 (Bankr. W.D. Wash. 2017); *see also In re Wash. Builders Benefit Tr.*, 173 Wn. App. 34, 73 (2013) (citing and relying on both the Second and Third Restatements).

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 18
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

RESTATEMENT (SECOND) § 257 ill. 3.  In the illustration, after B's breach of trust,

each of C and D have a 40% interest in the remaining trust *res* ($10,000 of the

remaining $25,000), so that A's intent can be carried out and each of B, C, and D

ultimately receive their one-third beneficial interest of the total.  Notably, the

Restatement's illustration states that the co-beneficiaries receive "out of the trust

property" what they should always have received.  The trust *res* itself puts them

in the position they would have been in but for the trustee-beneficiary's breach of

trust—they do not have to look solely to the trustee-beneficiary's own assets for

relief.

   Washington follows this rule.  In *In re Jackson's Estate*, 200 Wn. 116

(1939), the executor of an estate, who was also a devisee under the will, had

incurred a debt to the estate, and the Supreme Court affirmed the trial court's

holding that both the executor's fees and his share in the estate should be applied

to pay off the debt.  The Court held:  "Where the executor or administrator of an

estate is its debtor, the amount of his indebtedness is to be retained out of his

distributive share…."  *Id.* at 118.  The Supreme Court in *Jackson's Estate* relied

on an Oregon case, *Stanley v. U.S. Nat'l Bank of Portland*, 110 Or. 468 (1924).

*See Jackson's Estate*, 200 Wn. at 119.

   In *Stanley*, the decedent had left timber land to his descendants and

appointed one of his sons, who was also a devisee under the will, as executor.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 19
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

The executor made none of the distributions called for by the decedent's will, "except those made to himself," and he "wasted and misappropriated a large portion of the estate." *Id.* at 651-52. The Oregon Supreme Court held that "[t]he right to retain a legacy or distributive share from a debtor to the estate exists in the case of an indebtedness to the estate arising out of the conversion, waste, or misapplication of assets by a legatee or distributee while acting in the capacity of executor or administrator." *Id.* 658. Because the executor's liability for his breach of trust was "in excess of the value of his share of the estate," the court held that the executor's rights in the estate "have been satisfied, and in equity such satisfaction operates to extinguish his title to the remaining property of the estate." *Id.* at 664.

Notably, the court in *Stanley* relied upon cases involving trustees who were also beneficiaries. In disposing of a claim by the executor's judgment creditor to the executor's share of the estate, the court quoted the English case *Doering v. Doering*, [1889] 42 Ch. Div. 203, for the proposition that the trustee in this situation is treated "as having received his share by anticipation, and the answer to any claim made by the trustee is this: 'You have already received your share; you have it in your own hands;' and his assignee is in no better position." *Stanley*, 110 Or. at 664 (quotation marks omitted). In turn, both the RESTATEMENT (SECOND) and BOGERT'S TRUSTS & TRUSTEES cite *Stanley* for the

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 20
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

proposition that "[i]f a trustee who is one of the beneficiaries commits a breach of trust, the other beneficiaries are entitled to a charge upon his beneficial interest to secure their claims against him for the breach of trust." RESTATEMENT (SECOND) § 257 reporter's notes; *see also* BOGERT'S TRUSTS & TRUSTEES § 191 n.18.

Under the rule set forth in *Jackson's Estate* and *Stanley*—as well as in the RESTATEMENT and BOGERT'S—KPHD's beneficial interest in the Ayers Property is "charged," "retained," and "impounded" to the extent necessary to distribute to the University the proceeds from the Ayers Property it would have received but for KPHD's breach of trust.

### 2. The equitable charge on KPHD's beneficial interest arose immediately, and as a matter of law.

The charge upon KPHD's beneficial interest, and the reallocation of that interest to the extent necessary, occurred immediately upon its breach of trust.

In the case *In re Van Nostrand's Will*, 29 N.Y.S.2d 857 (N.Y. Sur. Ct. 1941), it was discovered after the death of a testamentary trust's trustee-beneficiary that he had taken funds from the trust in an amount greater than his beneficial interest. *Id.* at 862. Nevertheless, his successors-in-interest claimed his beneficial interest in the trust. *Id.* at 863. The court was not sympathetic, stating that "the position that a defaulting and embezzling fiduciary or those claiming through him, may receive a distribution of assets of an estate which he

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 21
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

has so grievously wronged and to which there has been a minimum of restitution appears fundamentally opposed to the most primary principles of equity." *Id.*

The court then held "that *immediately* upon the making of the defalcations an equitable lien was impressed upon any rights or interests which [the trustee-beneficiary] possessed in the estate and that these were in effect *forthwith* appropriated by equity for the purpose of accomplishing partial restitution of his misappropriations." *Id.* at 865 (emphasis added). Likewise, here, upon KPHD's breach of trust its equitable interest was immediately charged with the amount necessary to make the University whole, and that amount was allocated by equity to the University's share.

There are several reasons why such an allocation is unaffected by the subsequent bankruptcy of the breaching trustee-beneficiary. We address two. First, the charge is against trust property that is not "property of the debtor" for purposes of bankruptcy law or proceedings. Thus, the equitable charge re-allocated interests in an asset that is outside this bankruptcy proceeding.

Second, as shown just above, the Restatement states that the charge against the trustee's beneficial interest is "to secure" the co-beneficiaries' claims. RESTATEMENT (SECOND) § 257. An official comment explains:

> The creditors of the trustee-beneficiary stand in no better
> position than that in which he stands, and the charge of
> the other beneficiaries upon the interest of the trustee-

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 22

Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC   Doc 138   Filed 04/26/19   Entered 04/26/19 20:18:20   Pg 29 of 50

beneficiary can be enforced, although his creditors have brought a proceeding to reach his interest and apply it to the satisfaction of their claims.

*Id.* cmt. b.

Either way, the University's charge remedy comes directly from the Ayers Property, not from KPHD's own assets, Bogert's Trusts & Trustees § 191, and thus is not affected by KPHD's bankruptcy, *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994). And if the charge against KPHD's beneficial interest exceeds the value of that interest, KPHD's interest is extinguished. *Jackson's Estate*, 200 Wn. at 119, citing *Stanley*, 110 Or. 648. This what the law of trusts requires. Nothing in the Settlement Agreement or its Amendment is contrary to this. The opposite is true: those agreements are fully consistent with these rules and requirements, because they require and accomplish the true-up of beneficial interests that the law requires.

### 3. The parties' settlement is consistent with trust law: it trues up the trust interests and provides for an immediate reallocation of the interests in the remaining Ayers Property.

The Ayers' wills mandate that the net proceeds from the Ayers Property be divided equally between the University and KPHD, 50-50. KPHD breached its fiduciary duty as trustee by keeping for itself all of the proceeds from the Easterday and Bauder sales. Rather than defend those claims, KPHD negotiated

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 23
Adv. Case No. 17-80042-FPC9

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

and reached a settlement with the University, which included agreement as to each party's going-forward interest in the remaining Ayers Property.

The Liquidation Trust has argued that whatever trust rights the University once had as a beneficiary, the Settlement Agreement erased and replaced them with only the rights of an unsecured creditor. (*E.g.*, ECF No. 116 at pp. 3, 6, 7 & 16.) The Court rejected this argument, and concluded that the trust continues to exist, that the remaining Ayers Property is its *res*, and that KPHD remains as trustee and the University as beneficiary. (Order at 12, ¶¶ 16–17.) The Liquidation Trust continues, nonetheless, to make essentially the same argument it made before, and which was rejected: that the Court should now ignore the equitable charge against the Ayers Property, and should conclude instead that the University is simply an unsecured creditor against the assets of KPHD (which do not include the Ayers Property) in regard to the University's recovery of the trust funds stolen by KPHD.

This argument fails here just as it failed in the first round of summary judgment motions. There is neither factual nor legal basis for an allegation that the University waived the continued existence of the trust, and thus no basis for an argument that the University waived the applicability of the law of trusts.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 24
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

### a. The University's remedy comes from the trust itself, as contemplated under trust law.

This adversary proceeding is about interests in the remaining trust property, and how to divvy the proceeds of the sale of this real estate. While the University has an unsecured claim here to the extent it is unable to recover its full beneficial interest in the trust property, that claim is not what this adversary proceeding is about. This action is about the remaining Ayers Property—which is not the debtor's property under the rulings the Court has already made—and about entitlement to the proceeds of its sale.

The provisions at issue in the Settlement Agreement provide that the remaining trust property shall be sold and the entirety of the proceeds from that sale delivered directly to the University, with the requirement that the University remit to KPHD proceeds (if any) that exceed one-half of the total sale proceeds minus the balance of withheld proceeds and interest thereon. (Settlement Agreement ¶ 5(c).) These provisions provide that, upon the sale of the remaining trust property, each beneficiary will have received its correct half-share of the total Ayers Property proceeds—just what the law of trusts requires (to the extent the value of this property is sufficient to make the University whole). The University and KPHD thus put in a writing the very remedy provided for by *Jackson's Estate*, *Stanley*, the RESTATEMENT, and BOGERT'S. *See Jackson's*

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 25
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC · Doc 138 · Filed 04/26/19 · Entered 04/26/19 20:18:20 · Pg 32 of 50

*Estate*, 200 Wn. at 118; *Stanley*, 110 Or. at 658; RESTATEMENT (SECOND) § 257; BOGERT'S TRUSTS & TRUSTEES § 191.

The Settlement Agreement sets forth the parties' interests in the trust *res* itself, by effecting a reallocation of KPHD's and the University's rights with regard to the *remaining* Ayers Property, to remedy the fund diversion. *See Van Nostrand's Will*, 29 N.Y.S.2d at 865; *see also In re Craig*, 144 F.3d 593, 596 (8th Cir. 1998) (debtor's pre-petition performance of obligation renders agreement non-executory); *Sundstrom v. Sundstrom*, 15 Wn.2d 103, 108 (1942) (equitable assignment of interest is present transfer). KPHD and the University's respective beneficial interests in the Ayers Property remained unchanged: each still had (and has) a right to 50% of the **total** proceeds from the Property. But because KPHD distributed over $3.7 million to itself that it should have distributed to the University, the Settlement Agreement allocated to the University the right to **all** proceeds from future sales of the remaining Ayers Property, with a duty to remit to KPHD one-half of these proceeds minus the balance of withheld proceeds and interest thereon.

Under these provisions, the University's remedy comes from the trust itself—that is, **not** from "property of the debtor."

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 26
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

### b. Putting the University's remedy in writing does not exempt it from the rules of trust law.

That KPHD and the University recited their interests in the remaining Ayers Property as part of a settlement agreement does not take their relationship out of the world of trusts. There is no reason why (and no authority holding that) a trustee and a beneficiary cannot settle their claims, and put in writing the mechanism by which the trustee's breach of trust is remedied, without transforming their relationship into that of a debtor and creditor.

In fact, the authority is to the contrary. As we addressed in the University's prior motion, a written agreement can recite trust rights and obligations without transforming the trustee-beneficiary relationship into one of a debtor and creditor. (ECF No. 118, at 9–11); *see also* RESTATEMENT (THIRD) § 95 cmt. a ("Even a trustee's express agreement to perform the duties of the trusteeship does not make those duties enforceable in an action at law.").

This is especially true where, as here, the arrangement the trustee and beneficiary put in writing carries out the grantors' intent and the remedial scheme contemplated by the law of trusts. To hold that making such a writing destroys a beneficiary's rights, remedies, and protections under established trust law and replaces them with the claim of a general creditor would discourage beneficiaries from settling disputes with their trustees. Because "Washington law strongly

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 27

Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

favors the public policy of settlement over litigation," the Court should avoid this outcome and enforce the Settlement Agreement. *Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wn.2d 762, 772 (2007) (en banc).

### c. The result of the interests in the remaining Ayers Property.

Under the Settlement Agreement, KPHD was obligated to pay to the University $3,216,632.48 ($3.2 million for withheld sale-proceeds distributions, the balance for withheld operating-proceeds distributions). KPHD paid $1,016,632.48 of this amount immediately. KPHD then made further payments amounting to $645,682.89, of which $160,623.07 paid accrued interest and $485,059.88 paid down the principal due. Therefore, the principal balance of the equitable charge today is $1,714,940.18. Pursuant to the law of trusts and as set forth in the Settlement Agreement, KPHD's one-half beneficial interest in the remaining Ayers Property—whatever dollar amount that may be after the Property is sold—has been reduced by that amount, and the University's correspondingly increased.

### 4. The Amendment provides for the disposition of the Ayers Property.

Like the Settlement Agreement, the Amendment carries out the Ayers' intent as expressed in their wills. And like the Settlement Agreement, the Amendment should be read and applied in light of applicable trust law.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 28
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

KPHD and the University agreed to the Amendment because KPHD had become unable to perform its duties as trustee. At the time, KPHD still held legal title to the remaining Ayers Property and still had the obligation to sell it so that its beneficiary, the University, could receive the proceeds. But its financial situation rendered KPHD unable to market and sell the remaining Property.

Thus, among other things, the Amendment provides that upon written notice the University may require KPHD to transfer title to the remaining Ayers Property to the University. (Amendment ¶ 5.) The University exercised this right, and KPHD and the University executed the documents necessary to transfer title to the University and deposited them in escrow.

### a. The Amendment furthers the Ayers' intent.

The Amendment's provision allowing transfer of title from KPHD to the University furthers the intent expressed in the Ayers' wills and the requirements of the law of trusts, in at least two ways. First, it allows title to be placed in the hands of the party with the ability and the willingness to market and sell the Ayers Property.

Second, it maintains the remedial framework established by the law of trusts and implemented by the Settlement Agreement. Consistent with its beneficial interest in the Ayers Property as stated in the wills, the Amendment states that "'KPHD's Property Valuation Share' is fifty percent (50%) of the Fair

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 29
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Value" of the remaining Ayers Property. (*Id.* ¶ 6(c).) The Amendment further provides that KPHD is entitled to its Property Valuation Share to the extent that amount exceeds its Obligation Amounts, including the balance of the withheld proceeds from the Easterday and Bauder sales (and interest thereon) and various expenses associated with the transfer of title to the University and with selling the remaining Ayers Property. (*Id.* ¶ 6(d), (f), (g).)

To the extent KPHD's Property Valuation Share does not exceed these amounts, then its beneficial interest in the Ayers Property is extinguished as a matter of law. *Jackson's Estate*, 200 Wn. at 119, citing *Stanley*, 110 Or. 648.

The Amendment, like the original Settlement Agreement, has as its sole concern the administration of trust property in conformance with the intent expressed in the Ayers' wills and consistently with the law of trusts. Moreover, KPHD's obligation, upon the University's demand, to transfer to the University title to the remaining Ayers Property should not be affected by KPHD's bankruptcy, because the only "property of the debtor" involved is bare legal title to the remaining Ayers Property, and the debtor "derives no benefit from the debtor's ownership, as trustee, of the bare naked legal title to the property." *In re Jones*, 121 B.R. 122, 124 (Bankr. M.D. Fla. 1990) (lifting stay to allow bank to foreclose interest in property to which debtor held only legal title).

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 30
Adv. Case No. 17-80042-FPC9

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

### b. The result of the Amendment

Following the Amendment, the University performed. To value the remaining Ayers Property as required by the Amendment, the University obtained three valuations for the two parcels that comprise the remaining Ayers Property, one being leased orchard property, and the other range/dry-farm land. (First Mondou Decl. ¶ 25.) Utilizing the formula in the Amendment, the "Fair Value" of the remaining Ayers Property, as defined in paragraph 6(b) of the Amendment, is $3,641,282. (First Mondou Decl. ¶ 25 & Ex. W; Amendment ¶ 6(a)–(b).) One-half of this Fair Value is $1,820,641—this is the "KPHD Property Valuation Share." (First Mondou Decl. ¶ 26; *see also* Amendment ¶ 6(c).)

This is offset by the "KPHD Obligation Amounts," including the $1,714,940 that KPHD failed to repay, plus costs and interest; these total at least $2,173,115—which is $352,474 more than KPHD's Property Valuation Share. (First Mondou Decl. ¶¶ 27, 28 & Ex. X; *see also* Amendment ¶ 6(f).)

Because KPHD's Property Valuation Share is less than its Obligation Amounts, KPHD's beneficial interest in the remaining Ayers Property is extinguished. *Jackson's Estate*, 200 Wn. at 119, citing *Stanley*, 110 Or. 648.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 31
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 38 of 50

**5. In the alternative, the Settlement Agreement and the Amendment are themselves trust-creating instruments entitled to enforcement.**

In the event the Court were to reject the foregoing, and in the alternative, the Settlement Agreement and the Amendment should be regarded as creating a new trust. As set forth in the University's first motion for summary judgment and opposition to the Liquidation Trust's motion for summary judgment, the relationship between KPHD and the University described in the Settlement Agreement meets all of the requirements of a trust relationship between a trustee and a beneficiary. (ECF No. 101, at 30–32; ECF No. 115, at 21–23.)

To summarize briefly: a trust exists under Washington law when a person has or accepts property "with the express or implied understanding that he is not to hold it as his own absolute property, but to hold and apply it for certain specified purposes." *Wash. Builders*, 173 Wn. App. at 58, quoting *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 133 Wn. App. 835, 845–46 (2006). Pursuant to the Settlement Agreement, the legal title holder of the Ayers Property, KPHD, undertook to (a) share with the University one-half of the proceeds from the operation of the Ayers Property and (b) market and sell that Property, with the proceeds to go directly to the University out of escrow, as outlined above. (Settlement Agreement ¶¶ 4–5.) This is a declaratory trust.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 32
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 39 of 50

Per Washington statute and the common law of trusts, a declaratory trust is created when a person declares that he or she "holds identifiable property as trustee." RCW 11.98.008; *see also* RESTATEMENT (THIRD) § 10(c). By entering into the Settlement Agreement, KPHD declared that it held the Ayers Property as trustee by agreeing to "hold and apply it for certain specified purposes;" i.e., for the University's benefit. *See Wash. Builders*, 173 Wn. App. at 58; *see also* RESTATEMENT (THIRD) § 2. The case *In re Capps*, 193 B.R. 955, 960–63 (Bankr. N.D. Ala. 1995), illustrates the fact that a bilateral settlement agreement can create a trust if it satisfies the criteria, even where that agreement never once uses the phrase "in trust." (ECF No. 101, at 31–32); *see also FDIC v. Myhre*, 249 F.2d 887, 890 (9th Cir. 1957); *Gurley v. Lindsley*, 459 F.2d 268 (5th Cir. 1972), *mandate withdrawn and reissued on other grounds*, 466 F.2d 498; *Klickman v. Klickman*, 51 Or. App. 457, 462 (1981); *State ex rel. Knight Oil Co. v. Verdeman*, 409 S.W.2d 672, 676 (Mo. 1966); *Powell v. Parks*, 126 Tex. 338, 342 (1935).

Whether the Court treats the Settlement Agreement and its Amendment as instruments that reflect the remedial provisions of the underlying law of trusts and carry out the Ayers' intent expressed in their wills, or as trust-creating instruments in their own right, the outcome is the same: those agreements should be enforced according to their terms, regardless of KPHD's subsequent bankruptcy.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 33
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

### 6. The University's claim for a charge against KPHD's beneficial interest in the remaining Ayers Property is incontrovertible.

KPHD's arm's-length assent to the Settlement Agreement renders unnecessary any need to assess the University's claim for breach of fiduciary duty. But, in the event the Court were to deem it necessary to confirm the University's entitlement to its equitable charge against KPHD's beneficial interest in the remaining Ayers Property, the evidence of a breach of duty is overwhelming and, moreover, undisputed.

As trustee, KPHD owed fiduciary duties to the trust's beneficiary, the University. Those include the duty to "administer the trust solely in the interests of the beneficiaries." RCW 11.98.078(1); *see also* RESTATEMENT (THIRD) § 78(1). Therefore, a trustee "is strictly prohibited from engaging in transactions that involve self-dealing." RESTATEMENT (THIRD) § 78(2). In keeping for itself all proceeds from the Easterday and Bauder sales, KPHD breached its duty of loyalty to the University.

The Liquidation Trust has argued—as did KPHD in 2015—that the water rights which were part of this sale are personal property not appurtenant to the land, and therefore that such rights, and proceeds from their sale, are not subject to the trust or the mandate of the Ayers' wills. (*See* Am. Complaint ¶¶ 8.5,

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 34
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 41 of 50

10.5.)  But whether the permit was appurtenant to the land is irrelevant, for at least three reasons.

*First*, the rents derived from the land also were personal property not appurtenant to the land, but they had to be shared—and in fact were shared in a clear course of dealing—because the wills expressly provide that *all proceeds from the Ayers Property* must be shared.  The wills are thus clear that the characterization of such proceeds (whether as real property or personal property) is irrelevant; the wills provide that all proceeds are to be shared.

Indeed, KPHD deducted costs associated with seeking the water rights from the gross proceeds of the Ayers Property, reducing the net proceeds shared with the University, and included these costs in its accounting of trusts expenses. (*E.g.*, First Mondou Decl. Ex. E.)  In other words, the University's beneficial interest has been charged with costs incurred by KPHD in seeking water rights, demonstrating plainly that such rights belong to the trust.

*Second*, regardless of its status as real or personal property, the water permit was obtained through pursuit of an opportunity that belonged to the trust, making it a violation of the trustee's fiduciary duty to keep the resulting proceeds. It is undisputed, for example, that without its legal title to the Ayers Property that it held in trust, KPHD could not have applied for or obtained the water rights.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 35
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*Grynberg v. Watt*, 717 F.2d 1316, 1317 (10th Cir. 1983) illustrates the point. There, two co-trustees applied for mining rights through a lottery system on behalf of themselves individually and the trust they managed. Applying basic trust principles from the RESTATEMENT (SECOND), the Court of Appeals held that the trustees violated their duty of loyalty by submitting their own applications and thus putting themselves in potential conflict with the trust:

> If one of the trustees had obtained a place ahead of the trust in the drawing, he or she would have been in a position of direct conflict with the trust; in essence it was usurping an opportunity from the trust. The trustee would be unable to take the lease without breaching his or her fiduciary duty to the trust.

*Id*. at 1319. Thus, "[h]ad either trustee won the lease, he or she *would have held it in trust* for the beneficiary" of the trust. *Id*. (emphasis added); *see also Renz v. Beeman*, 589 F.2d 735, 745–48 (2d Cir. 1978) ("The trust possessed an intangible asset which was to be free of competition from its fiduciary…. To upset the balance of control for selfish gain is to commit a breach of the high fiduciary duty of undivided loyalty.").

*Third*, a trustee may not manage a trust in a manner that benefits itself at the expense of beneficiaries. RCW 11.98.078(8); RESTATEMENT (THIRD) § 78 cmt. d; *see also id*. § 86 cmt. c.2. Had KPHD obtained but not sold the water rights, the rents for the irrigated Ayers Property would have increased

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 36
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC  Doc 138  Filed 04/26/19  Entered 04/26/19 20:18:20  Pg 43 of 50

significantly, for the benefit of both beneficiaries.  This was the parties' original plan when obtaining the water rights was first explored.  As a fiduciary, KPHD was not allowed to trade away that mutual benefit for its own gain.

Thus, for KPHD to keep the proceeds was a breach of its duty of undivided loyalty to "act impartially… giving due regard to the beneficiaries' respective interests."  RCW 11.98.078(8); see also RESTATEMENT (SECOND) § 170, cmts. k, *l* & p.  The opportunity to enhance the value of the land by obtaining that permit belonged to the trust.  Just as with the mining rights sought by the trustees in *Grynberg*, for KPHD to obtain the water rights solely for itself usurped the trust's opportunity, in breach of KPHD's fiduciary duty to the University.

*Fourth,* KPHD further breached its fiduciary duty to the University by concealing the fact that the Easterday sale had closed and that KPHD was not sharing the proceeds with the University.  Regardless of whether it acts "in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter."  RESTATEMENT (THIRD) § 78(3).  There is no question that KPHD had a duty to disclose material information about the administration of the Ayers Property, and the undisputed facts show a violation of that duty.

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 37
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*Finally*, the University's reliance on KPHD's assurances that it would share the water-rights proceeds estopped KPHD from taking a contrary position when it eventually received the proceeds. *See Liebergesell v. Evans*, 93 Wn.2d 881, 888 (1980).

Each of these grounds provides independent support for a meritorious claim that KPHD breached its fiduciary duty, subjecting its beneficial interest in the remaining Ayers Property to a charge in favor of the University.

**B.    The Remaining Ayers Property Should Be Transferred to the University.**

**1.  The contemplated escrow transaction is no longer possible.**

As contemplated by the Amendment, the University and KPHD executed a statutory warranty deed and other documents transferring to the University legal title to the Ayers Property, and deposited those documents in escrow. The Liquidation Trust refers to these documents and this escrow as the "Escrow Transaction." (Am. Complaint ¶¶ 3.40–3.43 & 7.2.) The University had sought the Court's permission to close that transaction, but now any such relief is impossible. Because of actions by both KPHD and the Liquidation Trust since plan confirmation, the Escrow Transaction now simply cannot close.

The Escrow Transaction, and the documents that comprise it, contemplate a transfer of the remaining Ayers Property from KPHD to the University. (First

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 38
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Mondou Decl. Ex. V.)  Precisely because the status of and the rights in the Ayers Property were at issue in this proceeding, the terms of the Plan Confirmation Order were amended at the confirmation hearing, expressly *to preclude any transfer* of the Ayers Property except as ordered by the Court in this adversary case.  (Case No. 17-02025-FPC9, ECF No. 981, at p. 33 (ordering that "the Ayers Property shall not be transferred by deed or otherwise except as subject to and as ordered in the UPS Adversary Proceeding").)

Notwithstanding this order, KPHD and the Liquidation Trust arranged for the transfer of the parcels comprising the remaining Ayers Property to the Liquidation Trust by quitclaim deeds.  They accomplished this transfer on or about December 3, 2018.  As of today, in violation of the Confirmation Order, title is held by the Liquidation Trust.  No one provided any notice of this transaction to the University (or to the Court so far as we can tell), and no one at the University knew this was happening.  To the contrary, the University suspected something was amiss only upon receipt of the pending Motion for Order Compelling the Debtor to Comply with Its Plan of Adjustment (Case No. 17-02025-FPC9, ECF No. 1242), which prompted our inquiry by its reference to property transfers.  (Yanick Decl. ¶ 4 & Ex. 2.)

As a result of KPHD's and the Liquidation Trust's disregard of the Court's order, the Escrow Transaction now has been mooted:  obviously KPHD cannot

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 39
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

transfer title to the University if it has already transferred title to someone else. Nor would a re-conveyance back to KPHD now allow the Escrow Transaction to proceed: all of the documents would need to be re-created, with new dates, to eliminate title uncertainties caused by the intervening, unauthorized transfer to the Liquidation Trust.[8]

### 2. The Court should order a transfer in accordance with the Amendment, so that each beneficiary obtains its beneficial interest as the Ayers intended.

Given that the Escrow Transaction now cannot close, the University requests that Court direct that the terms of the Settlement Agreement, as amended, be enforced and that the transfer of title to the Ayers Property to the University as contemplated by the Amendment allowed and ordered.

The Settlement Agreement, its Amendment, and the transactions they contemplate put into practice the underlying law of trusts and carry out the intent expressed by the Ayers' wills. The remaining Ayers Property is not "property of the debtor," and those agreements provided for the disposition of the sale

---

[8] The University reserves all rights and remedies arising from or relating to the unauthorized transfer in violation of the Court's order (except its claim to close the Escrow Transaction, which is now not possible and which claim is disposed of in the partial settlement stipulation, ECF No. 137).

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 40
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 47 of 50

1  proceeds in accordance with each beneficiary's interest. The terms of the

2  Settlement Agreement, as amended, should thus be enforced and the transfer to

3  the University of title to the Ayers Property as contemplated by the Amendment

4  allowed and ordered.

5      Were the Court to conclude there are grounds to decline to enforce the

6  transfer of property as set forth in the Amendment, the question of who should

7  sell the trust Property, and under what guidelines and procedures, would remain

8  and would need to be decided. As of now, KPHD remains the trustee of the trust.

9  It has never been relieved of that responsibility.

10     If the Court were to determine that it will not allow and order the transfer

11 as the parties agreed in the Amendment, the Court may exercise its power as a

12 court in equity to order that a sale or other transfer take place in a manner that

13 ensures the distribution of sale proceeds consistently with the beneficiaries'

14 respective remaining interests in the property, on such terms, guidelines and

15 procedures which the Court deems equitable and just. *Hough v. Stockbridge*, 150

16 Wn.2d 234, 236 (2003) ("Sitting in equity, a court 'may fashion broad remedies

17 to do substantial justice to the parties and put an end to litigation,'" quoting

18 *Carpenter v. Folkers*, 29 Wn. App. 73, 78 (1981).)

19

20

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 41
Ady. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## IV.  CONCLUSION

For the foregoing reasons, the University respectfully requests that the Court approve the transfer of the remaining Ayers Property to the University as contemplated by the Amendment to the Settlement Agreement.

DATED: April 26, 2019.

SAVITT BRUCE & WILLEY LLP

By:   *s/ James P. Savitt*
   James P. Savitt, WSBA #16847
   Miles A. Yanick, WSBA #26603
   Jacob P. Freeman, WSBA #54123
   1425 Fourth Avenue, Suite 800
   Seattle, Washington  98101-2272
   Telephone:  206.749.0500
   Facsimile:  206.749.0600
   Email:   jsavitt@sbwllp.com
       myanick@sbwllp.com
       jfreeman@sbwllp.com

DANIEL R. MERKLE PS

By:   *s/ Daniel R. Merkle*
   Daniel R. Merkle, WSBA #13589
   1325 Fourth Avenue, Suite 940
   Seattle, Washington  98101-2509
   Telephone:  206.624.9392
   Facsimile:  206.624.0717
   Email:   danm@msfseattle.com

*Attorneys for The University of Puget Sound*

THE UNIVERSITY OF PUGET SOUND'S
SECOND MOTION FOR SUMMARY
JUDGMENT - 42
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 26, 2019 I electronically

filed the foregoing document with the Clerk of Court using the CM/ECF system

which will send notification of such filing to all counsel of record.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

DATED this 26th day of April, 2019 at Seattle, Washington.

*Gabriella Sanders*
Gabriella Sanders

CERTIFICATE OF SERVICE
Adv. Case No. 17-80042-FPC9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

17-80042-FPC    Doc 138    Filed 04/26/19    Entered 04/26/19 20:18:20    Pg 50 of 50